UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC CANTONA, OLYMPICA SPORTS MANAGEMENT, a foreign company, and JOEL CANTONA ORGANISATION, a foreign company.<br><br>       Plaintiffs,<br><br>vs.<br><br>NEW YORK COSMOS LLC,<br><br>       Defendant | Case No.: |

**COMPLAINT**

Plaintiff's Eric Cantona ("Cantona"), Olympica Sports Management ("Olympica"), and Joel Cantona Organisation ("Joel Cantona Organisation"), by and through their undersigned attorney, for their Complaint against Defendant New York Cosmos LLC ("Defendant" or "Cosmos") follows upon knowledge as to himself and his acts and to all other matters upon information and belief:

## NATURE OF THE ACTION

1. This is an action seeking relief for breach of contract that obligated Cosmos to pay Cantona, Olympica, and Joel Cantona Organisation in accordance with the terms of an employment contract ("agreement").

2. On January 17, 2011, Cantona a world renowned football ("soccer") player with a colorful past signed an employment agreement with Cosmos where he agreed exclusively to provide his skills as the Director of Soccer for the New York Cosmos and as a member of the New York Cosmos "Soccer Board" in return Cosmos promised to

pay Cantona compensation directly, a 4 percent Equity stake in Cosmos, pay compensation to Olympica Sports Management and Joel Cantona Organisation.

3. Cosmos signed the employment agreement, through Paul Z. Kemsley and Terry Byrne, who at the time were Chairman and Vice Chairman, respectively.

4. Pursuant to the Agreement, Cantona duly undertook performance of his duties, performed all of his obligations and fulfilled all conditions required under his Agreement.

5. Cosmos breached the contract by failing to pay the agreed upon amount, by failing to pay commissions, and by failing to issue an equity interest to Cantona.

6. Cantona requested payment through his attorney on several occasions to no avail.

7. Subsequently, Cantona was involved in a confrontation initiated by a paparazzi photographer in London, he was cautioned by the police and was released without charges.

8. Cosmos sent a termination letter to Cantona stating "Mr. Cantona's actions have brought the New York Cosmos and its brand into material disrepute."

9. Cantona asserted the "termination is uncaused, unjustified and unacceptable." "That the episode...with the photographer, was just an excuse to try to get out of the contract that the club was already not respecting for months."

10. Cantona thus now seeks damage for breach of contract in the amount of $961,290.00 that Cantona is entitled to pursuant to the employment contract, his 4 percent equity interest, his attorney fees and expenses incurred in bringing this suit and otherwise enforcing his entitlement.

11. As stated under section 11.2 of the January 17, 2011 agreement, the Cosmos are to pay Olympica Sports Management and Joel Cantona Organisation a fee in the amount of the U.S. dollar equivalent of €400,000.00, to be payable over the course of the Term in equal quarterly installments.

12. As of September 2013, Olympica and Joel Cantona Organisation had not been fully paid under the terms of the agreement.

13. Olympica now seeks damages for breach of contract in the amount of the U.S. dollar equivalent of €40 138,89 that Olympica is entitled to pursuant to the employment contract, attorney fees and expenses incurred in bringing this suit and otherwise enforcing their entitlement.

14. Joel Cantona Organisation now seeks damages for breach of contract in the amount of the U.S. dollar equivalent of €40 138,89, Joel Cantona Organisation is entitled to pursuant to the employment contract, attorney fees and expenses incurred in bringing this suit and otherwise enforcing their entitlement.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332 (a) (1), as Plaintiff Cantona is domiciled in the State of New York, Plaintiffs Olympica and Joel Cantona Organisation are parties who benefit under the contract, and Defendant is a citizen of a foreign state, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

16. Venue lies in this District pursuant to 28 U.S.C. § 1391 (a) (2) or (3) as a substantial part of the events giving rise to Plaintiff's claim has taken place in this district,

Defendant is subject to personal jurisdiction in this district and pursuant to the agreement the parties submit themselves to this venue.

## THE PARTIES

17. Plaintiff, Eric Cantona is a resident of France and is otherwise *sui juris*.

18. Plaintiff, Olympica Sports Management is a foreign corporation and third party beneficiary.

19. Plaintiff, Joel Cantona Organisation is a foreign corporation and third party beneficiary.

20. Upon information and belief, Defendant NEW YORK COSMOS LLC, ("Defendant" "Cosmos") is a limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 75 Greene Street 2ⁿᵈ Floor New York, New York, 10012.

## FACTUAL ALLEGATIONS

**The Employment Agreement**

21. Cantona is former international football ("soccer") player for the French national team whose colorful career spans over 30 years. He played for several teams before finishing his career at Manchester United where he won four Premier League titles in five years, two League and FA Cup Doubles and was inducted into the English Football Hall of Fame. Shortly after, he managed and coached the French Beach Soccer national team until 2008.

22. In late 2010, Cosmos sought Cantona to revitalize the once dissolved team, achieve the highest soccer stature and to be the number one team in the United States. On January

17, 2011, the parties executed a four (4) year employment agreement to which Cantona agreed to provide exclusively his skills as a world renowned soccer player to serve as the Director of Soccer for the New York Cosmos and as a member of the New York Cosmos "Soccer Board" in return their promise to pay Cantona compensation directly, to Olympica Sports Management and Joel Cantona Organisation. (*See attached hereto Employment Agreement as Exhibit A*).

23. With Cantona at the helm, Cosmos found immediate success by being admitted in an outdoor professional soccer league, the North American Soccer ("NASL") and winning the Fall Season Championship with a 9–4–1 record.

24. Pursuant to paragraph 2.1- 2.1.4 of the agreement, compensation to Cantona for the first year was $800,000.00, the second year was $900,000.00, the third year was $1,000,000.00 and the fourth year was to be $1,200,000.00.

25. Pursuant to paragraph 2.5 of the agreement, Cantona was also entitled to receive an equity interest representing an ownership interest of four (4) percent in the Cosmos, if the Cosmos or Affiliate shall be admitted as a member of the Major League Soccer "MLS". MLS is defined in paragraph 2.4 of the contract as Major League Soccer, LLC or any other men's outdoor professional soccer league in the United States.

26. Pursuant to paragraph 11.2, Cosmos shall pay Olympica Sports Management and Joel Cantona Organisation a fee in the U.S. dollar equivalent of €400,000.00 of which €80,293,89 amount remains unpaid.

27. Despite Cantona's hard work and effort to get the Cosmos in the NASL, Cosmos knowingly and intentionally breached the contract as early as September 2013 by failing to pay the agreed upon compensation to Cantona. In a March 19, 2014 letter to Mr.

Cantona, Cosmos acknowledged that they had failed to pay $488,710.00 that had accrued by March 12, 2014.  The Cosmos gave no justification or notice and took no reasonable steps to rectify this breach until six (6) months later.   (*See attached hereto March 19 correspondence as Exhibit B*).

28.  The Cosmos eventually paid the outstanding amounts to Cantona, and Olympica Sports Management and Joel Cantona Organisation after the cancellation of the contract by Cosmos.

29.  On two separate occasions, January 14 and February 14, 2014, Mr. Christophe Bertrand, French legal counsel for Mr. Cantona, sent written notice of the ongoing breach to the Cosmos in accordance with section 11.1.  As required by 8.4.2(A), Mr. Cantona's counsel provided thirty (30) days' notice to the club, and the Cosmos failed to correct or take any reasonable steps to correct the failure as was their obligation under section 8.4.2(B).  In fact, Cosmos failed to respond either verbally or in writing. (*See attached hereto February 14 correspondence as Exhibit C*)

30.  By the time Cosmos offered to pay the aforementioned amount in arrears they had been in breach for six months.  Mr. Cantona chose not to terminate the contract despite the "good cause" and thus obligated Cosmos to pay the liquidated damages pursuant to the agreement.

31.  Upon information and belief the Cosmos claim of termination for cause was merely a pretext to cancel the agreement that they were already in breach and responsible for damages.  The motivation behind this termination was the Cosmos desire to not pay Mr. Cantona the four (4) percent equity interest in the Cosmos that had accrued.

32. Upon information and belief the facts and circumstances demonstrate Cosmos acted in bad faith and indicate intent to circumvent its liabilities and consequences under the contract.

33. Mr. Cantona also seeks recognition and compensation for the equity stake he has earned in the Cosmos.  According to the terms of the contract, in sections 2.4 and 2.5, Mr. Cantona's equity stake of four (4) percent equity interest in Cosmos accrued once the club was admitted into the N.A.S.L. and played its first game in October 2013.

34. Cosmos have failed to pay a representation and management fee to Olympica Sports Management and Joel Cantona Organisation, a sum totaling approximately €80,293,89.

35. At the time of alleged termination of the contract in March 2014, Cosmos were already in breach to Cantona's agreement, and the Cosmos continue to be responsible for the full amount payable under the contract.  Cantona seeks full compensation for the third party beneficiaries under the terms of the contract.

36. Upon information and belief the facts and circumstances demonstrate Cosmos acted in bad faith and indicate intent to circumvent its liabilities and consequences under the contract.

37. The Cosmos have committed a substantial and ongoing breach of their duties and obligations under the contract with Cantona.

38. All conditions precedent to bringing this action have either occurred, expired or been waived.

### CLAIM FOR RELIEF
### BREACH OF CONTRACT

39. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 37 above as if fully set forth herein.

40.  The Employment Agreement executed by Cantona and Cosmos formed a valid and enforceable contract.

41.  Cosmos breached the Agreement by (1) failing to pay Cantona compensation pursuant to paragraph 2.1- 2.1.4 of the agreement; (2) by failing to pay recognize and compensate Cantona an equity interest in Cosmos pursuant to paragraph 2.4 and 2.5 and (3) by failing to pay commissions due pursuant to paragraph 11.2.

42.  As a result of the foregoing breaches, Cantona has suffered damages, including but not limited to compensation due under the four year agreement, damage to his reputation, loss of equity interest, loss of future employment, loss of business, and loss of goodwill.

43.  As a result of the foregoing breaches, Olympica and Joel Cantona Organisation have suffered damages including commissions due under the four year agreement.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a.  compensatory damages as a result of Defendants' breach in an amount to be proven at trial;

b.  pre- and post-judgment interest at the statutory rate;

c.  attorney's fees and expenses incurred in connection with this action and preceding actions;

d.  The costs and disbursements of this action; and

e.  such other relief this Court deems just and proper.

## SECOND CAUSE OF ACTION

44. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 37 above as if fully set forth herein.

45. Defendant by its malicious and inequitable conduct breached its implied duty of good faith and fair dealing and engaged in conduct to force Plaintiff Cantona out of his agreement, resulting in his termination, in a wrongful attempt to deprive him of his compensation and equity interest in Cosmos.

46. Defendant's wrongful, bad faith breach and termination excused Plaintiff Cantona from further performance on his part and from fulfilling any remaining conditions on which the vesting of his remaining compensation amounts are based; and Defendant is otherwise estopped from asserting any conditions in the Agreement as a bar to Cantona's recovery of his remaining withheld compensation for the duration of the Agreement. As a result of Defendant's wrongful conduct and breach, Cantona has suffered consequential damages in the principal amount of $961,290.00 for earned compensation, which would have become due in the ordinary course of business but for Defendant's malicious, inequitable conduct and breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a. compensatory damages as a result of Defendants' bad faith breach in an amount to be proven at trial;

b. pre- and post-judgment interest at the statutory rate;

c.   attorney's fees and expenses incurred in connection with this action and preceding actions;

d.   The costs and disbursements of this action; and

e.   such other relief this Court deems just and proper.

### THIRD CAUSE OF ACTION

47.   Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 37 above as if fully set forth herein.

48.   Plaintiffs, in reasonable reliance upon Defendant's promises and representations to pay compensation and commissions, performed valuable services for the Defendant in the years 2011-2014, which Defendant accepted and from which it profited.

49.   Despite due demand, Defendant has failed or refused to pay all compensation due to Cantona for said services, thereby unjustly enriching itself to Cantonas' detriment, and causing Cantona to suffer damages in a principal amount no less than $961,290.00, plus interest in an amount to be determined.

50.   Despite due demand, Defendant has failed or refused to pay all commissions due to Olympica and Joel Cantona Organisation for said services, thereby unjustly enriching itself to Olympica and Joel Cantona Organisation's detriment, and causing Olympica and Joel Cantona Organisation to suffer damages in a principal amount no less than the U.S. dollar equivalent of €80,293.89 plus interest in an amount to be determined.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a.   compensatory damages as a result of Defendants' unjust enrichment in an amount to be proven at trial;

b.  pre- and post-judgment interest at the statutory rate;

c.  attorney's fees and expenses incurred in connection with this action and preceding actions;

d.  The costs and disbursements of this action; and

e.  such other relief this Court deems just and proper.

## FOURTH CAUSE OF ACTION

51. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 37 above as if fully set forth herein.

52. Defendant is an employer within the meaning of the New York State Labor Law, and is subject to all the duties and obligations set forth therein.

53. Plaintiff is an employee within the meaning of the New York State Labor Law, and is entitled to all the rights set forth therein.

54. Pursuant to the terms of the Agreement, Defendant was obliged to pay Cantona $488,710.00, compensation, plus interest, on March 12, 2014, to which Defendant's continue to owe Cantona interest.

55. As of April 21, 2015, Defendant was additionally obliged to pay Cantona $961,290.00.

56. Defendant has wrongfully withheld payment of Cantona's compensation, and Olympica and Joel Cantona Organisation's commissions. Although duly demanded, Plaintiffs have not received payment of the compensation, or commissions due to him.

57. Defendant's withholding of payment to Plaintiffs or refusal to pay is a violation of Article 6 of New York's Labor Law, by reason of which Plaintiff Cantona has been damaged in an amount no less than $961,290.00, plus interest and Plaintiffs Olympica and Joel

Cantona Organisation have been damaged in the amount no less than the U.S. dollar equivalent of €80,293.89, plus interest.

58. Pursuant to Labor Law § 198.1-a, Cantona is entitled to an award of liquidated damages in an amount equal to 25% of the amount of compensation owed, as well as an award of attorneys' fees and costs in an amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a.  compensatory damages as a result of Defendants' breach and violation of Article 6 in an amount to be proven at trial;

b.  pre- and post-judgment interest at the statutory rate;

c.  attorney's fees and expenses incurred in connection with this action and preceding actions;

d.  The costs and disbursements of this action;

e.  Liquidated damages in the amount of 25% and

f.  such other relief this Court deems just and proper.

## FIFTH CAUSE OF ACTION

59. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 37 above as if fully set forth herein.

60. On or about January 17, 2011, Plaintiff Cantona and Defendant entered into a valid and binding Agreement.

61. Under Section 11.2 of the Agreement between Plaintiff Cantona and Defendant, the parties intended for Olympica and Joel Cantona Organisation to benefit under the Agreement in the amount of the U.S. dollar equivalent of €400,000.00, to which €80,293.89 is still owed.

62. Despite due demand, Defendant has failed or refused to pay all commissions due to Olympica for said services, thereby unjustly enriching itself to Olympicas' detriment, and causing Olympica to suffer damages in a principal amount no less than the U.S. dollar equivalent of €40,138.89 plus interest in an amount to be determined.

63. The benefit to Olympica under the Agreement is immediately due in the amount of the U.S. dollar equivalent of €40,138.89 plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a. compensatory damages as a result of Defendants' breach and violation of Article 6 in an amount to be proven at trial;

b. pre- and post-judgment interest at the statutory rate;

c. attorney's fees and expenses incurred in connection with this action and preceding actions;

d. The costs and disbursements of this action;

e. Liquidated damages in the amount of 25% and

f. such other relief this Court deems just and proper.

## SIXTH CAUSE OF ACTION

64. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 38 above as if fully set forth herein.

65. On or about January 17, 2011, Plaintiff Cantona and Defendant entered into a valid and binding Agreement.

66. Under Section 11.2 of the Agreement between Plaintiff Cantona and Defendant, the parties intended for Olympica and Joel Cantona Organisation to benefit under the Agreement in the amount of the U.S. dollar equivalent of €400,000.00, to which €80,138.89 is still owed.

67. Despite due demand, Defendant has failed or refused to pay all commissions due to Joel Cantona Organisation for said services, thereby unjustly enriching itself to Joel Cantona Organisation's detriment, and causing Joel Cantona Organisation to suffer damages in a principal amount no less than the U.S. dollar equivalent of €40,138.89 plus interest in an amount to be determined.

68. The benefit to Joel Cantona Organisation under the Agreement is immediately due in the amount of the U.S. dollar equivalent of €40,138.89 plus interest.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a. compensatory damages as a result of Defendants' breach and violation of Article 6 in an amount to be proven at trial;

b. pre- and post-judgment interest at the statutory rate;

c. attorney's fees and expenses incurred in connection with this action and preceding actions;

d. The costs and disbursements of this action;

e. Liquidated damages in the amount of 25% and

f. such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff's, Cantona, Olympica and Joel Cantona Organisation, demand trial by jury of all issues triable as of right by jury in this action.

Dated this ____ of May, 2015.

Respectfully submitted,
**/s/Michael C Compo**
Michael C Compo, Esq.
FBN: 028889
Michael C Compo, P.A.
9999 NE 2nd Avenue, Suite 306
Miami Shores, FL 33138
Phone: 786-871-7712
Fax:    786-871-7832
mcompolaw@gmail.com
*Attorney for Plaintiffs*

EXECUTION COPY

## CONSULTING AGREEMENT

**THIS AGREEMENT** (this "**Agreement**") is made the 17th day of January, 2011

**BETWEEN:**

(1)     **NEW YORK COSMOS LLC,** a Delaware limited liability company (hereinafter referred to as the "**New York Cosmos**"); and

(2)     **ERIC CANTONA** (hereinafter referred to as "**Mr. Cantona**").

**WHEREAS,** the New York Cosmos, being one of the world's iconic football teams, wishes to retain Mr. Cantona as a consultant as provided herein and Mr. Cantona has accepted the position on the terms and conditions in this Agreement.

**NOW, THEREFORE,** in consideration of the foregoing, the mutual covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**1.     DURATION**

1.1     The term of this Agreement will be for the period commencing on the date hereof (the "**Effective Date**") and ending on 31 December 2014, unless earlier terminated in accordance with Section 8 below (the "**Term**").

1.2     The Parties may extend the term by mutual written agreement at any time during the Term, in which case any reference herein to "Term" shall be to such extended period.

**2.     REMUNERATION**

2.1     Mr. Cantona will receive the following cash compensation during the Term:

2.1.1     During the first year of the Term (the Effective Date - 31 December 2011) the sum of Eight Hundred Thousand Dollars ($800,000).

2.1.2     For the second year of the Term (1 January 2012 - 31 December 2012) the sum of Nine Hundred Thousand Dollars ($900,000).

2.1.3    For the third year of the Term (1 January 2013 - 31 December 2013) the sum of One Million Dollars ($1,000,000).

2.1.4    For the fourth year of the Term (1 January 2014 - 31 December 2013) the sum of One Million Two Hundred Thousand Dollars ($1,200,000).

2.1.5    The amounts set forth in Section 2.1.1 through 2.1.4 will be paid by equal monthly installments in arrears pursuant to the New York Cosmos' normal payroll policies. The first payment is to be made to Mr. Cantona on or about 31 January 2011.

2.1.6    The cash compensation set forth in this Section 2 shall be inclusive of any and all agent fees and costs, except as set forth in Section 11.2.

-  2.1.7    Mr. Cantona will be responsible for paying any applicable income tax and social contribution in respect of this Agreement. In the event the New York Cosmos is required or deems itself responsible, the New York Cosmos shall, in its discretion, withhold all applicable foreign and domestic States federal, state and local taxes, social security, medicare and worker's compensation contributions (and the foreign equivalent thereof) and such other amounts as may be required by applicable law with respect to the compensation payable to Mr. Cantona pursuant to this Section 2. For greater certainty, the amounts of Mr. Cantona's compensation set forth in this Section 2 are gross amounts and in no event shall the New York Cosmos be required to gross up any such amounts for the amounts paid or withheld pursuant to the immediately preceding sentences.

2.2    2.2.1    Except to the extent provided otherwise hereunder and subject to meeting eligibility requirements, including, but not limited to any requirement to be a full-time employee located in the United States, as in effect from time to time, Mr. Cantona shall be entitled to participate in such employee benefit plans, practices and programs maintained by the New York Cosmos and made available to senior executives or consultants of the New York Cosmos generally, including, without limitation, such pension, retirement, savings, medical, hospitalization, disability, life or travel accident insurance, vacation, sick leave, and personal leave plans as are made available to senior executives or consultants of the New York Cosmos. Except as otherwise provided hereunder, Mr. Cantona's participation in such plans, practices and programs

shall be on the same basis and terms as are generally applicable to senior executives of the New York Cosmos. The New York Cosmos reserves the right to cancel or change the employee benefit plans, practices and programs it offers to its employees, include those made available to its senior executives, at any time.

2.2.2   Mr. Cantona will also be provided with a cellular device with data capability, a laptop computer and other perquisites, in each case, on the same basis as generally provided to other similarly situated senior executives and consultants of the New York Cosmos, as determined in the sole discretion of the New York Cosmos; provided, however, that any such benefits are subject to modification and/or elimination at the discretion of the New York Cosmos at any time and for any reason; provided, further, however, that any such benefits are subject to applicable payroll taxes and other withholdings referred to in Section 2.1.6.

2.2.3   Mr. Cantona shall have the use of a personal assistant/secretary situated in the New York office of the New York Cosmos. Such personal assistant/secretary shall be shared with the Honorary President of the New York Cosmos.

2.2.4   In the event the New York Cosmos reasonably require Mr. Cantona to obtain a visa and work permit for purposes of performing his duties hereunder, the New York Cosmos and Mr. Cantona shall use commercially reasonable efforts to obtain such visa and work permit as promptly as practicable. The New York Cosmos shall be responsible for any and all expenses incurred in connection therewith.

2.3   The New York Cosmos shall advance to or reimburse Mr. Cantona for reasonable and necessary direct, out-of-pocket expenses incurred by Mr. Cantona in the performance of his duties hereunder and approved by the New York Cosmos, subject to the submission by Mr. Cantona of documentation in such form and consistent with such procedures as the New York Cosmos may from time to time require. All payments made to Mr. Cantona under this Section 2.3 shall be made promptly in accordance with the normal business practices of the New York Cosmos and in no event later than the end of the calendar year following the calendar year in which Mr. Cantona incurs the expense. The amount of expenses eligible for advancement or reimbursement provided in any calendar year shall not in any way affect the expenses eligible for advancement or reimbursement in any other calendar year.

2.4      In the event the New York Cosmos or an Affiliate (as defined below) thereof shall be admitted as a member of Major League Soccer, L.L.C. or any other men's outdoor professional soccer league in the United States ("MLS"), the New York Cosmos may, at any time during the third year of Term (1 January 2013 - 31 December 2013) or earlier upon Mr. Cantona's agreement, require that Mr. Cantona relocate from his then current principal residence to the greater New York City metropolitan area in order to fulfill his duties under this Agreement. In the event Mr. Cantona is required to relocate as contemplated herein, Mr. Cantona shall so relocate and the New York Cosmos shall promptly, but in any event not later than March 15 of the calendar year following the date on which the New York Cosmos advise Mr. Cantona of the requirement to relocate, advance or reimburse, as Mr. Cantona may reasonably request, any reasonable relocation expenses reasonably incurred or to be incurred and properly substantiated in writing by Mr. Cantona. Notwithstanding the foregoing, in the event Mr. Cantona is required to relocate as contemplated herein, he shall be present in the greater New York City metropolitan area not later than the date immediately prior to the date on which the First Team (as defined below) commences training for the MLS season and shall not depart earlier than the date which is (i) in the event the First Team plays in the MLS Cup final (i.e., the championship game of the MLS), ten (10) Business Days (as defined below) following the date of such game, or (ii) in the event the First Team does not play in the MLS Cup final, one Business Day following the date on which the First Team plays its final game (including all playoff games) in such season (the "**Season**"); provided, however, that Mr. Cantona may, during the period from the date on which he is required to be present hereunder to the date immediately prior to the First Team's first regular season match in MLS in any Season, reasonably attend to other matters outside of the greater New York City metropolitan area.

2.5      In the event (i) the New York Cosmos or an Affiliate thereof shall be admitted as a member of MLS during the Term, and (ii) the First Team plays its first regular season game in MLS during the Term or within six (6) months following the expiration of the Term (which period shall be extended in the event the MLS regular season is delayed for all teams therein), so long as this Agreement has not been terminated pursuant to Section 8.2, Mr. Cantona shall, on the date referred to in the immediately preceding clause (ii), receive an equity stake representing an ownership interest of four percent (4%) in the Company or such Affiliate thereof, whichever holds the membership interest in MLS (the "**Equity Interest**").

4-01-11 15:50          BUREAU          ->01435799918          BCM Page 4

2.6     For purposes of this Agreement, "**Affiliate**" means, with respect to any specified person, any other person who, directly or indirectly, controls, is controlled by, or is under common control with the person in question.

3.     **JOB DESCRIPTION**

3.1     Mr. Cantona shall serve as the Director of Soccer for the New York Cosmos.

3.2     Mr. Cantona shall additionally serve as a member of the New York Cosmos "Soccer Board."

3.3     Mr. Cantona shall, under the direction of the Board of Directors of the New York Cosmos (the "**Board**") and in accordance with the policies of the New York Cosmos in effect from time to time, faithfully and to the best of his ability perform the duties of his position. His duties, as more specifically identified in Section 4 below, will include, but not be limited to, assisting the New York Cosmos on all player related matters including any academies run by the New York Cosmos.

4.     **DUTIES**

4.1     During the Term, Mr. Cantona shall devote such of his working time, energy and skills to his position with the New York Cosmos as is set forth herein and shall not render any services of a business, commercial or professional nature to any person or organization other than the New York Cosmos or be engaged in any other business activity other than as permitted herein. Notwithstanding the foregoing, Mr. Cantona may undertake any business activity or have any business interest (including, without limitation, serving on corporate, civic or charitable boards of directors or committees, participating in broadcasts of soccer games and soccer related television, internet and radio shows, etc.) unrelated to the New York Cosmos, so long as any such activity or interest (i) does not interfere with the performance of his duties hereunder, (ii) does not bring into disrepute the business reputation of the New York Cosmos, and/or (iii) is not provided for or is not held in (A) any professional or amateur soccer team in the United States or anywhere in the world, other than Manchester United or any amateur soccer team in the Republic of France, or (B) any brand, company or product that conflicts with the primary business of either the principal shirt sponsor or stadium sponsor, when determined in the sole discretion of the New York Cosmos, of the New York Cosmos.

4.2   During the Term, Mr. Cantona shall consult on a regular basis with the Board and its executive officers, including, without limitation, the Honorary President of the Company, as well as the Soccer Board and the Company's officers and/or employees principally responsible for the administration of the Company's soccer academies, to advise the Company on soccer-related matters (including, without limitation, as to amateur and professional players, team composition and the like).

4.3   In addition to the foregoing, Mr. Cantona shall perform the following services for the Company with respect to (i) the three soccer games the Company has planned in calendar year 2011, and (ii) the six soccer games the Company has planned in calendar year 2012 (collectively, the "**Games**"), the dates and locations of which are to be confirmed:

   4.3.1   Mr. Cantona shall be responsible for overseeing the selection and drafting of the players to comprise the Company's first team (the "**First Team**");

   4.3.2   Mr. Cantona shall arrive at the Game destination no later than seven (7) days prior to the game and he shall not depart such destination until at least one (1) day following the completion of the Game;

   4.3.3   Mr. Cantona shall, during the period prior to the Game, attend to the training and preparation of the Company's team;

   4.3.4   Mr. Cantona shall travel with the Company's team as and when the team travels as a group;

   4.3.5   Mr. Cantona shall, during the period prior to and following the Game, make such personal appearances and participate in such other public relations activities in connection with his role as Director of Soccer for the New York Cosmos as the New York Cosmos may reasonably require (which shall not count towards the appearances required pursuant to Section 5.3 below); and

   4.3.6   Mr. Cantona shall manage the First Team for each Game and during each such Game be situated on the First Team's player bench.

4.4   In the event the Company becomes a member of MLS, the parties shall negotiate in good faith to determine the scope of any reasonable additional duties which Mr. Cantona shall be required to perform hereunder during the third and fourth years of the

Term (which shall, at a minimum, include the duties he is required to perform in the calendar years prior thereto).

## 5.   MEDIA; PERSONAL APPEARANCES

5.1   The announcement of Mr. Cantona's appointment as Director of Soccer for the New York Cosmos will be made in New York City at a date to be determined by the New York Cosmos in January 2011. Mr. Cantona shall participate in all public relations activities in connection therewith and he shall wear such New York Cosmos branded product as may be requested and provided by the New York Cosmos therefor. The New York Cosmos may use, reproduce, distribute, transmit, adapt, publicly perform, publicly display, publish, republish and otherwise use the Cantona Likeness (as defined below) in any media now known or hereafter developed, including but not limited to printed mater or other text or writings, audio recordings, digital recordings, photographs, film, video tapes, negatives, DVDs, the Internet or other electronic or digital media, solely for purposes of the announcement contemplated in this Section 5.1 for no additional compensation to Mr. Cantona.

5.2   Mr. Cantona shall participate in a promotional tour to be conducted by the New York Cosmos in Asia on such dates prior to June 30, 2011 as the Company may reasonably determine, taking into account Mr. Cantona's prior commitments and such other business activities in which he is then engaged. Mr. Cantona's participation in such tour shall not exceed seven calendar days, exclusive of travel time.

5.3   Mr. Cantona will be required to make such personal appearances and participate in such other public relations activities in connection with his role as Director of Soccer for the New York Cosmos as may be reasonably requested by the New York Cosmos, and he shall wear such New York Cosmos branded product as may be requested and provided by the New York Cosmos in each case therefor; provided, however, that in no event shall Mr. Cantona be required to make more than four (4) public appearances during the first year of the Term and six (6) public appearances during the second year of the Term and in each case no such public appearance shall exceed 24 hours, exclusive of travel time.

5.4   The New York Cosmos shall, if practicable, give Mr. Cantona not less than ten (10) Business Days prior written notice of any personal appearance or public relations activity he is required to make or participate in, as applicable, pursuant to Section 5.3. The parties hereto agree to cooperate in good faith to resolve any conflicts in scheduling

any such appearance or activity, but in the event a conflict cannot be resolved, any and all appearances and activities requested by the New York Cosmos shall take precedence over any other appearances and/or activities for which Mr. Cantona is committed, except with respect to any such appearance or activity which Mr. Cantona shall have notified the New York Cosmos within fifteen (15) Business Days of the Effective Date and thereafter. For purposes of this Agreement, a "**Business Day**" means any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the State of New York or is a day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

5.5    Mr. Cantona's requirements to make personal appearances and participate in other public relations activities in connection with his role as Director of Soccer for the New York Cosmos hereunder in the third and fourth years of the Term shall be substantially the same as in the second year of the Term; provided, however, that in the event the Company becomes a member of MLS, the parties shall negotiate in good faith to determine the scope of any reasonable additional requirements to make personal appearances and participate in other public relations activities for the third and fourth years of the Term (which shall, at a minimum, be no less than the requirements in the second year of the Term), all of which additional appearances and activities shall take place during the Season.

5.6    The New York Cosmos shall not make use of, or permit a third party to make use of, the Cantona Likeness (as defined below) in a manner than can be seen as constituting an endorsement of any third party's products, business or services, other than the New York Cosmos. In the event the New York Cosmos receive an inquiry from any licensee or sponsor thereof regarding the possible engagement of Mr. Cantona for the sponsorship of such licensee or sponsor unrelated to the New York Cosmos, the New York Cosmos agree to refer such licensee or sponsor to Mr. Cantona's duly authorized representative in respect thereof.

5.7    If Mr. Cantona should be unable to fulfill any of his obligations under Section 5.3 due to any event reasonably outside of Mr. Cantona's control, the parties shall cooperate in good faith to reschedule such obligation, if such obligation can be rescheduled, as soon as reasonably possible thereafter, and the failure to fulfill any such obligation as contemplated hereby shall not be a default or breach by Mr. Cantona of his obligations under this Agreement.

5.8   Notwithstanding anything to the contrary contained herein, Mr. Cantona shall not be required to make any personal appearance or participate in any public relations activities in connection with his role as Director of Soccer for the Company if such appearance or participation would materially conflict with Mr. Cantona's contractual arrangements with any person or entity for which he provides endorsement services in effect on the Effective Date set forth on Exhibit A attached hereto or any other person or entity with which he enters into any such contractual arrangements after the date hereof in compliance with this Agreement (which shall thereafter be set forth on Exhibit A)

## 6.   TRAVEL AND ACCOMMODATION

6.1   Without limiting the generality of Section 2.2, during the Term of this Agreement, the New York Cosmos will advance or promptly reimburse all of Mr. Cantona's reasonable travel and accommodation expenses in relation to the performance of Mr. Cantona's duties under this Agreement, subject to the submission by Mr. Cantona of documentation in such form and consistent with such procedures as the New York Cosmos may from time to time require, including, without limitation:

6.1.1   first class airfare for Mr. Cantona and one companion;

6.1.2   accommodation at a luxury hotel or if a luxury hotel is not available at the location, the New York Cosmos will endeavor to accommodate Mr. Cantona at the highest ranking hotel available; and

6.1.3   other than when Mr. Cantona is traveling with the First Team, the Company shall provide ground transportation and security for Mr. Cantona.

Notwithstanding anything to the contrary contained in this Section 6.1, the New York Cosmos shall make all travel and accommodation arrangements for Mr. Cantona in relation to the performance of Mr. Cantona's duties under this Agreement. In the event Mr. Cantona makes his own travel arrangements, such arrangements shall require the New York Cosmos' prior approval.

## 7.   IMAGE RIGHTS / ENDORSEMENTS

7.1   For purposes of this Agreement, **"Cantona Likeness"** means, individually and collectively, Mr. Cantona's name, image, nickname, voice, signature, likeness, biographical information (including, without limitation, the results achieved by Mr. Cantona), and other attributes of his personality.

7.2 During the Term, Mr. Cantona will not endorse, nor will he appear in or allow the Cantona Likeness to appear in (i) any advertising (print, digital, television, etc) or other communications for, any professional or amateur soccer team in the United States or anywhere in the world, other than Manchester United or any amateur soccer team in the Republic of France, or (ii) the promotion of any brand, company or product that conflicts with the primary business of either the principal shirt sponsor or stadium sponsor, when determined in the sole discretion of the New York Cosmos, of the New York Cosmos.

7.3 For greater certainty, other than as provided in Section 5.1 and other than for archival or historical purposes., the New York Cosmos shall have no right or obligation whatsoever to use the Cantona Likeness.

## 8. TERMINATION

8.1 The retention of Mr. Cantona as a consultant hereunder shall terminate immediately upon the happening of any of the following:

8.1.1 the death of Mr. Cantona;

8.1.2 if Mr. Cantona is unable, by virtue of illness or physical or mental disability or incapacity to perform Mr. Cantona's essential job functions hereunder, whether with or without reasonable accommodations, in substantially the manner and to the extent required hereunder prior to the commencement of such disability for a total period of sixty (60) non-consecutive days during any consecutive twelve-month period;

8.1.3 the termination of this Agreement by the New York Cosmos for Cause. For purposes of this Agreement, the term "Cause" shall mean:

(i) default or other breach by Mr. Cantona of his obligations under this Agreement, including, but not limited to any failure or refusal by Mr. Cantona to perform his responsibilities hereunder, other than as a result of a disability as provided in Section 8.1.2 above; provided, however, that the New York Cosmos has first given Mr. Cantona written notice and a reasonable opportunity of not less than ten (10) days to cure the condition giving rise to the alleged breach or failure; and

(ii)    (A) misconduct, dishonesty or insubordination; (B) use of illegal drugs or abuse of alcohol such as to interfere with the performance of Mr. Cantona's obligations hereunder; (C) conviction of or plea of guilty or *nolo contendre* to a felony or crime involving moral turpitude, dishonesty, theft or fraud; (D) conduct, which in the reasonable opinion of the New York Cosmos, brings Mr. Cantona, the New York Cosmos or any subsidiary or Affiliate of the New York Cosmos or its brand into material disrepute, (E) failure by Mr. Cantona to comply in any material respect with applicable laws or governmental regulations with respect to the New York Cosmos' operations or the performance of Mr. Cantona's duties, or (F) failure by Mr. Cantona to obtain the appropriate United States visa and/or work permit within ninety (90) days following the date on which the Company requests he do so pursuant to Section 2.2.4, other than in the event the New York Cosmos shall have failed to comply with its obligations in Section 2.2.4 in respect thereof; provided, however, that where such breach or failure related to (A) through (F) above by Mr. Cantona is curable, Mr. Cantona has first been given written notice and a reasonable opportunity of not less than ten (10) days to cure the condition giving rise to the alleged breach or failure.

8.2    Upon termination of this Agreement pursuant to Section 8.1 (the actual date of such termination being referred to as the "**Termination Date**"), the New York Cosmos shall only be required to pay to Mr. Cantona such portion of the cash compensation (as set forth in Section 2.1) that has already accrued and remains unpaid through the effective date of termination and shall have no further obligation whatsoever to Mr. Cantona, other than reimbursement of previously incurred expenses which are appropriately reimbursable under the New York Cosmos' policies regarding expense reimbursement, and in the event Mr. Cantona shall have been granted the Equity Interest prior to such termination, the Equity Interest shall be immediately cancelled and Mr. Cantona shall receive no consideration therefor.

8.3    The New York Cosmos may additionally terminate this Agreement on not less than thirty (30) days' written notice of termination to Mr. Cantona. Upon any such termination or any termination of this Agreement by Mr. Cantona for Good Reason (as defined below) and the receipt by the New York Cosmos of a general release in form and substance reasonably satisfactory to the New York Cosmos executed by Mr.

Cantona that becomes effective and irrevocable no later than fifty-five (55) days following the Termination Date, the New York Cosmos shall (i) make a single lump sum payment to Mr. Cantona on the sixtieth (60th) day following the Termination Date in an amount equal to the aggregate amount of the cash compensation set forth in Sections 2.1.1, 2.1.2, 2.1.3 and 2.1.4 which, but for such termination, would have been payable through the end of the Term (the **"Termination Penalty"**), and (ii) if the Equity Interest had not been previously granted, grant to Mr. Cantona the Equity Interest on such date as the Equity Interest would become subject to grant pursuant to Section 2.5, if at all. The parties agree and declare that the amount of compensation payable to Mr. Cantona by the New York Cosmos by way of compensation for early termination of this Agreement pursuant to this Section 8.3 is a genuine pre-estimate of the damages that Mr. Cantona will suffer and shall be regarded as liquidated damages in full and final settlement of all claims in respect of such early termination.

8.4     8.4.1   In the event Mr. Cantona wishes to terminate this Agreement during the Term other than for Good Reason, he shall give the New York Cosmos not less than thirty (30) days written notice of his intention to do so, he shall not be required to pay any compensation to the New York Cosmos in respect thereof, and, in the event Mr. Cantona shall have been granted the Equity Interest prior to such termination, the Equity Interest shall be immediately cancelled and Mr. Cantona shall receive no consideration therefor. The parties agree and declare that the cancellation of the Equity Interest upon early termination of this Agreement pursuant to this Section 8.4.1 is a genuine pre-estimate of the damages that the New York Cosmos may suffer as a result of Mr. Cantona terminating this Agreement and takes into account costs which will be associated in finding a suitable replacement for Mr. Cantona and losses and expenses incurred and associated with Mr. Cantona's endorsement of New York Cosmos merchandise and associated products.

        8.4.2   **"Good Reason"** shall be any of the following (without Mr. Cantona's prior written consent): (i) a material decrease in Mr. Cantona's cash compensation or a failure by the New York Cosmos to pay any material compensation due and payable to Mr. Cantona in connection with this Agreement; (ii) any material diminution of the responsibilities with the New York Cosmos (except for reporting responsibilities), authorities or duties of Mr. Cantona from those in effect as of the date of this Agreement; or (iii) a material breach by the New York Cosmos of its obligations under this Agreement. Notwithstanding the

foregoing, no event or condition described in clauses (i) through (iii) of the immediately preceding sentence shall constitute Good Reason unless (A) Mr. Cantona gives the New York Cosmos prior written notice of his objection to such event or condition within thirty (30) days of the occurrence of the event or condition which would otherwise constitute Good Reason and (B) such event or condition is not corrected by the New York Cosmos within thirty (30) days of its receipt of such notice (or if such event or condition is not susceptible to correction within such thirty (30) day period, the New York Cosmos has not taken all reasonable steps within such thirty (30) day period to correct such event or condition as promptly as practicable thereafter).

8.5 8.5.1 For all relevant purposes hereunder, references herein to the termination of this Agreement shall be deemed to be a "Separation from Service" within the meaning of Section 409A of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations and guidance promulgated thereunder (collectively **"Section 409A"**).

8.5.2 The intent of the parties is that payments and benefits under this Agreement comply with Section 409A (or an exemption therefrom) and, accordingly, to the maximum extent permitted, this Agreement shall be interpreted to be in compliance therewith (or an exemption therefrom) and any provision that is ambiguous as to its compliance with Section 409A will be read in a manner to comply with Section 409A (or an exemption therefrom). The New York Cosmos will not reimburse Mr. Cantona for any taxes incurred under Section 409A; provided, however, that nothing herein shall serve to reduce any payment by the New York Cosmos to Mr. Cantona pursuant to this Agreement.

8.5.3 Each payment of the payments due upon separation from service will be considered a separate payment for purposes of Section 409A. Notwithstanding anything contained in this Agreement to the contrary, if the aggregate amount of non-exempt deferred compensation subject to Section 409A that would be payable to Mr. Cantona under Section 8.2 or 8.3 above through the date which is six (6) months after Mr. Cantona's separation from service exceeds the limit under Treas. Reg. Section 1.409A-1(b)(9)(iii)(A) and Mr. Cantona is a "specified employee" under Treas. Reg. Section 1.409A-1(i) on the date of his separation from service, then the excess will be paid to Mr. Cantona no earlier than the date which is six (6) months after the date of such separation (or, if

earlier, the date of Mr. Cantona's death). This delay will only be imposed to the extent required to avoid the tax for which Mr. Cantona would otherwise be liable under Section 409A(a)(1)(B) of the Internal Revenue Code. Upon the expiration of the applicable deferral period, any compensation or benefits which would have otherwise been paid during that period (whether in a single lump sum or in installments) in the absence of this Section 8.5.3 shall be paid to Mr. Cantona or Mr. Cantona's beneficiary in one lump sum.

8.5.4    To the extent that reimbursements or in-kind benefits under this Agreement constitute non-exempt "nonqualified deferred compensation" for purposes of Section 409A, (1) all reimbursements hereunder shall be made on or prior to the last day of the calendar year following the calendar year in which the expense was incurred by Mr. Cantona, (2) any right to reimbursement or in-kind benefits shall not be subject to liquidation or exchange for another benefit, and (3) the amount of expenses eligible for reimbursement or in-kind benefits provided in any calendar year shall not in any way affect the expenses eligible for reimbursement or in-kind benefits to be provided, in any other calendar year.

## 9.    NO PARTNERSHIP

Nothing in this Agreement shall be construed so as to create a partnership, joint venture or employment relationship between the parties.

## 10.    CONFIDENTIALITY

10.1    Mr. Cantona (i) recognizes that the New York Cosmos' business and financial records, customer lists, proprietary knowledge or data, intellectual property, trade secrets and confidential methods of operations, as they may exist from time to time and which relate to the then conducted or planned business of the New York Cosmos or its Affiliates, are valuable, special and unique assets of the New York Cosmos, access to and knowledge of which are essential to Mr. Cantona's performance with the New York Cosmos; and (ii) shall not, during or after the Term, disclose any of such records, lists, knowledge, data, property, secrets, methods or information to any person for any reason or purpose whatsoever (except for disclosures (x) compelled by law; provided, however, that Mr. Cantona promptly notifies the Board of any request for such information before disclosing the same, if practical, and (y) made as necessary in connection with the performance of his duties with the New York Cosmos) or make use of any such

ECM Page14                  -\01435?99|8                  BUREAU                  24-01-11 15:54

property for his own purposes or for the benefit of any person except the New York Cosmos or its Affiliates.

10.2   Any and all inventions, processes, procedures, systems, discoveries, designs, configurations, technology, intellectual property, works of authorship, trade secrets and improvements relating to the New York Cosmos (whether or not patentable and whether or not they are made, conceived or reduced to practice during working hours or using the New York Cosmos' data or facilities) and all portions thereof (collectively, the "**Inventions**") which Mr. Cantona makes, conceives, reduces to practice, or otherwise acquires during his engagement with the New York Cosmos (either solely or jointly with others), and which are related to the New York Cosmos and/or its then present or planned business, services or products, shall be the sole property of the New York Cosmos and shall at all times and for all purposes be regarded as acquired and held by Mr. Cantona in a fiduciary capacity for the sole benefit of the New York Cosmos. All Inventions that consist of works of authorship capable of protection under copyright laws shall be prepared by Mr. Cantona as works made for hire, with the understanding that the New York Cosmos, shall own all of the exclusive rights to such works of authorship under the United States copyright law and all international copyright conventions and foreign laws. Mr. Cantona hereby assigns to the New York Cosmos, without further compensation, all such Inventions and any and all patents, copyrights, trademarks, trade names or applications therefore, in the United States and elsewhere, relating thereto. Mr. Cantona shall promptly disclose to the New York Cosmos all such Inventions and shall assist the New York Cosmos in obtaining and enforcing for its own benefit patent, copyright and trademark registrations on such Inventions in all countries. Upon request, Mr. Cantona shall execute all applications, assignments, instruments and papers and perform all acts, such as the giving of testimony in interference proceedings and infringement suits or other litigation, necessary or desired by the New York Cosmos to enable each of the New York Cosmos and each of its successors, assigns and nominees to secure and enjoy the full benefits and advantages of such Inventions.

10.3   Mr. Cantona shall not, at any time during the Term or thereafter, disrupt, disparage, impair or interfere with the business of the New York Cosmos, whether by way of disrupting its relationships with clients, customers, agents, representatives or vendors, disparaging or diminishing the reputation of the New York Cosmos or otherwise.

10.4   The parties hereto shall undertake not to disclose the terms of the present agreement, except to the extent necessary for its effective execution. Mr. Cantona acknowledges

that a breach of this Section 10 may cause irreparable injury to the New York Cosmos for which monetary damages are inadequate, difficult to compute, or both. Accordingly, Mr. Cantona agrees that the provisions of this Section 10 may be enforced by specific performance or other injunctive relief. Expiration of the Term or the termination of this Agreement shall not release Mr. Cantona from his obligation to respect the terms of this Section 10.

## 11.   MISCELLANEOUS

11.1   All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by facsimile or electronic transmission with confirmation of successful delivery; the day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (*e.g.*, Federal Express); and upon receipt, if sent by certified or registered mail, return receipt requested. In each case, notice shall be sent to a party at the following address (or to such other address as a party may have specified by notice given to the other parties pursuant to this provision):

if to the New York Cosmos:

New York Cosmos, LLC
75 Greene Street
Second Floor
New York, NY 10012
Attention: Vice Chairman
E-mail: Terry@newyorkcosmos.com

with a copy to (which shall not constitute notice):

Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
Attention: Stuart R. Goldfarb
E-mail: sgoldfarb@orrick.com

if to Mr. Cantona:

3 Traverse Olympe
13007 – Marseille
France
Attention: Jean-Marie Cantona
E-mail: jmcantona@hotmail.fr

with a copy to (which shall not constitute notice):

Bertrand & Associe
15, Boulevard Richard Lenoir
75011 – Paris
France
Attention: Christophe Bertrand
E-mail: bertrandavocat@gmail.com

11.2     In connection with the execution of this Agreement, the New York Cosmos shall pay Olympica Sports Management and Joel Cantona Organisation a fee in the aggregate amount of the U.S. dollar equivalent of €400,000.  Such fee shall be payable over the course of the Term in equal quarterly installments in arrears within ten (10) days following the New York Cosmos receipt of an invoice therefor; provided, however, that such fee shall immediately cease to be due upon the termination of this Agreement pursuant to Section 8 and no further amounts thereof shall be payable following the Termination Date.  For greater certainty, the amounts of the fee set forth in this Section 11.2 is a gross amount and in no event shall the New York Cosmos be required to gross up such amount for taxes or other charges payable thereon or with respect thereto.

11.3     Each party hereto hereby represents and warrants that (i) such party has the full right, power and authority to enter into and carry out the terms and conditions of this Agreement and all transactions contemplated hereby, (ii) this Agreement constitutes the valid and binding obligation of such party, enforceable against such party in accordance with its terms, and (iii) the execution, delivery and performance of this Agreement and the taking of any other action provided hereby will not violate, be in conflict with or constitute a breach of or default under any agreement, contract or other instrument to which such party is a party or by which such party is bound.

11.4     The headings of the sections of this Agreement are only for convenience and shall not affect in any way the meaning of the provisions to which they refer.  All dollar amounts referred to herein are to United States dollars.

11.5    The failure at any time either of the New York Cosmos or Mr. Cantona to require the performance by the other of any provision of this Agreement shall in no way affect the full right of such party to require such performance at any time thereafter, nor shall the waiver by either the New York Cosmos or Mr. Cantona of any breach of any provision of this Agreement be taken or held to constitute a waiver of any succeeding breach of such or any other provision of this Agreement.

11.6    All remedies afforded in this Agreement shall be taken or construed as cumulative in addition to each and every remedy provided herein and by law.

11.7    If any provision of this Agreement is held invalid or unenforceable, the remainder shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

11.8    This Agreement may not be canceled, changed, modified, or amended orally, and no cancellation, change, modification or amendment hereof shall be effective or binding unless in a written instrument signed by the New York Cosmos and Mr. Cantona. A provision of this Agreement may be waived only by a written instrument signed by the party against whom or which enforcement of such waiver is sought.

11.9    This Agreement shall be governed by, construed and applied, and all disputes relating to or arising from this Agreement shall be resolved, in accordance with, the internal laws of the State of New York without giving effect to conflict of laws principles thereof.

11.10   Mr. Cantona hereby irrevocably submits to the non-exclusive jurisdiction of any United States Federal court or New York State court sitting in the City and County of New York over any action, suit or proceeding arising out of or relating to this Agreement. Mr. Cantona irrevocably waives, to the fullest extent permitted by law, any objection which he may have to the laying of the venue of any such action, suit or proceeding brought in such a court and any claim that any action, suit or proceeding brought in such a court has been brought in an inconvenient forum.

11.11   Neither party shall have the right or power to assign its rights or powers hereunder without the express written consent of the other, except that the New York Cosmos may assign or otherwise transfer its rights and obligations under this Agreement to an Affiliate. Any attempt to do so without such consent shall be null and void and shall give the other party the right to cancel and terminate this Agreement.

11.12   The parties agree to cooperate in good faith to update <u>Exhibit A</u> attached hereto from time to time as required or contemplated hereby.

11.13   The New York Cosmos and Mr. Cantona hereby agree that this Agreement fully sets forth all understandings and agreements between them with respect to the subject matter hereof and agree that no other understandings or agreements with respect to obligations of Mr. Cantona or the New York Cosmos hereunder shall be valid or of any effect whatsoever, unless expressly set forth in a subsequent written agreement between Mr. Cantona and the New York Cosmos.   This Agreement shall take effect only upon execution by all parties hereto. Any prior agreements are superseded and have no further force or effect.

11.14   This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures of the parties will have the same effect as original signatures. In making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

SIGNATURE PAGE FOLLOWS

IN WITNESS WHEREOF, this Agreement has been signed by the duly authorized representatives of the parties as of the day and year above written.

NEW YORK COSMOS LLC

By: _____
Name: Paul Z. Kemsley
Title: Chairman

By: _____
Name: Terry Byrne
Title: Vice Chairman

_____
Eric Cantona

OHS East:160828928.4
24934-1



**STUART R. GOLDFARB**
Partner
(212) 415-9346
goldfarb.stuart@dorsey.com

March 19, 2014

<u>**VIA FEDERAL EXPRESS AND E-MAIL**</u>

3 Traverse Olympe
13007 – Marseille
France
Attention:  Jean-Marie Cantona
E-mail: jmcantona@hotmail.fr

Re:    Consulting Agreement

Dear Mr. Cantona:

### Re: Termination of Consulting Agreement

This firm represents New York Cosmos LLC (the "New York Cosmos"). I am writing to inform you that the New York Cosmos is hereby terminating, effective as of March 12, 2014, that certain Consulting Agreement entered into between Eric Cantona ("Mr. Cantona") and the New York Cosmos on January 17, 2011 (the "Agreement") for "Cause" (as such term is defined in the Agreement) pursuant to Section 8.1.3(ii)(D) thereof.  Initially capitalized terms not otherwise defined herein have the meanings given to them in the Agreement.

Section 8.1.3(ii)(D) of the Agreement provides that the New York Cosmos may terminate the Agreement for Cause for, among other reasons, conduct by Mr. Cantona that "***brings Mr. Cantona, the New York Cosmos or any subsidiary or Affiliate of the New York Cosmos or its brand into material disrepute.***"

As you know, Mr. Cantona's arrest on March 12, 2014 for suspicion of assault has garnered significant ongoing and highly negative worldwide media attention.  In many if not all of the media stories, there is direct reference to Mr. Cantona's association with the New York Cosmos. It is indisputable that Mr. Cantona's actions – whether he is ultimately found guilty of the allegations or not – have brought himself, the New York Cosmos and its brand into material disrepute.  It is also clear that the events leading to the triggering of Section 8.1.3(ii)(D) – namely, the publishing of multiple media stories about Mr. Cantona's alleged actions and his relationship with the New York Cosmos – cannot be undone and are therefore not curable. Consequently, the New York Cosmos is not required under the Agreement to provide prior notice of termination and the corresponding opportunity to cure.

4851-9502-7993.3

## EXHIBIT B



Jean-Marie Cantona
March 19, 2014
Page 2

Pursuant to Section 8.2 of the Agreement, the New York Cosmos will remit payment to Mr. Cantona of $488,710.00, representing the amount accrued but unpaid through the termination date (March 12, 2014). Such amount (less applicable taxes) will be sent by wire transfer to the bank account previously designated by Mr. Cantona for the wiring of funds pursuant to the Agreement.

We remind Mr. Cantona of his continuing obligations under the Agreement, including, without limitation, Section 10 thereof, and more specifically, Sections 10.1 (Confidentiality) and 10.3 (Non-Disparagement), which expressly (as stated therein and in Section 10.4) continue following the Term of the Agreement. The New York Cosmos consider this a private matter between the New York Cosmos and Mr. Cantona and, as such, will not be making any public comment on this matter.

We thank Mr. Cantona for his service to the New York Cosmos and wish him the best of luck in his future endeavors.

Very truly yours,

Stuart Goldfarb
Partner


cc:   Christophe Bertrand
      Bertrand & Associe
      15, Boulevard Richard Lenoir
      75011 – Paris
      France
      E-mail: bertrandavocat@gmail.com

      Michael Bucks (New York Cosmos)



**BERTRAND & ASSOCIÉ**

15, Boulevard Richard Lenoir – 75011 PARIS
Tél : 33 (0)1 48 05 15 66 · Fax : 33 (0)1 43 57 99 18

www.bertrand-sport-avocat.com

Avocats Associés :

Jean-Jacques BERTRAND
Foreign Legal Consultant
Affilié au Barreau d'ARIZONA

Christophe BERTRAND
D.E.A. Obligations Civ. et Com.

Avocats Collaborateurs :

Emilie SACHOT
Master Droit Public
Professions Juridiques du Sport

Edmée LANGE
Master Droit du Sport

Avocats à la Cour

Thierry BARDAUD
Master Droit, Economie Gestion
Professions Juridiques du Sport

Juriste

En partenariat

Pascale BOYAJEAN-PERROT
D.E.A. Droit des Affaires

Avocat à la Cour

Jeff MARATHAS
Avocat au Barreau d'ARIZONA

**New York Cosmos**
**75 Green Street**
**Second Floor**
**New York , NY 10012**
**U.S.A**

Paris, le 14 février 2014

Registered mail
Copy by email : Seamus@newyorkcosmos.com



**To the attention of the Chairman**

Sir,

I am the legal counsel of Mr. Eric CANTONA, Olympica Sports Management and Joel CANTONA Organization.

On last January 14 (*copy enclosed*), I wrote to you about my clients' worries regarding the non respect of the Consulting Agreement dated January 17, 2011.

Unfortunately, it seems I haven't had any answer.

Furthermore, my clients let me know that the payments for January 2014 haven't been made.

SCPA BERTRAND & Associé

Société Civile Professionnelle d'Avocats
Palais P 36
RCS PARIS 444 207 054 – Code APE 741 A
TVA Intracommunautaire n° FR60444207054

MEMBRE G

**EXHIBIT C**



I ACCEPTE

Such a situation is not acceptable and the Club shall, with no delay, clarify its intention concerning :

> - the role devoted to Eric for 2014 (*as it seems Mr. Savarese was now named Sporting Director*),
> - the payments of the invoices and monthly installments,
> - the renewing of Eric's Visa.

In fact, concerning Eric's Visa, could you please confirm to me that the Club, as his employer, took and/or will took all the necessary steps to obtain, on time, its renewal ?

I am sure you understand that the non respect of the Consulting Agreement, plus the lack of answers to our different requests for the past few months, now puts my Clients in a very difficult position.

Therefore, without answer within the next 15 days upon receipt of this letter, my Clients will have no other choice but to consider :

> - requesting the assistance of our US correspondent Law Office,
> - all necessary actions before a Court (from New-York, but also from Paris, France) and/or before Soccer Organizations (NASL, USSF, FIFA, ...).

Of course, I hope such actions won't be necessary to obtain the respect of the Consulting Agreement.

Pursuant to article 11 of the Agreement, we address a copy of this letter to Orrick, Herrington & Sutcliffe LLP.

Of course, do not hesitate to contact me, directly or through your counsel.

Best regards.

Christophe BERTRAND
c.bertrand@bertrand-sport-avocat.com

2