William G. Primps
Vikram Kumar
51 West 52nd Street
New York, NY 10019-6119
(212) 415-9200

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- X

ERIC CANTONA, OLYMPICA SPORTS                15 CV. 03852 (RA)
MANAGEMENT, a foreign company, and JOEL
CANTONA ORGANISATION, a foreign
company,

      Plaintiffs,

-v-

NEW YORK COSMOS, LLC,

      Defendant.

----------------------------------------------------------------- X

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NEW YORK COSMOS,
LLC'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

I.  FACTUAL BACKGROUND ...........................................................................1

II.  ARGUMENT ...................................................................................................5

    A.  Plaintiffs' Breach of Contract Claim Should Be Dismissed ...................6

        i.  The Cosmos Were Not in Breach of the Agreement and Cantona Also Waived His Breach of Contract Claim Relating to Any Nonpayment By the Cosmos ........................................................6

        ii.  Cantona Was Properly Terminated Pursuant to the Morals Clause of the Agreement and is Owed No Further Money.....................9

        iii.  Plaintiffs Joel Cantona and Olympica Fail to Properly Plead a Cause of Action For Breach of Contract.......................................10

    B.  Cantona's Claim For Breach of the Covenant of Good Faith and Fair Dealing Should Be Dismissed .................................................13

    C.  Plaintiffs' Labor Law Article 6 Claim Should Be Dismissed Because Plaintiffs Are Not Employees and Fail to Assert a Substantive Cause of Action.........................................................................................16

    D.  Plaintiffs' Claims For Unjust Enrichment Should Be Dismissed.........19

        i.  Plaintiff Cantona's Cause of Action for Unjust Enrichment Should Be Dismissed ...............................................................19

        ii.  Olympica Sports Management and Joel Cantona Organisation's Unjust Enrichment Claims Should Be Dismissed Because the Agreement is a Valid Agreement Between the Parties and Therefore Bars Suit on Unjust Enrichment...............................20

CONCLUSION........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*,
   70 A.D.3d 423 (1st Dep't 2010) ............................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................5

*Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield*,
   448 F.3d 573 (2d Cir. 2006) ..................................................................19

*Burr v. Stenton*,
   43 N.Y. 462 (1871) ................................................................................15

*Bynog v. Cipriani Group, Inc.*,
   1 N.Y.3d 193 (2003) ..............................................................................16

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ....................................................................5

*Corsello v Verizon N.Y., Inc.*,
   18 N.Y.3d 777 (2012) ............................................................................14

*Echostar DBS Corp. v. Gemstar–TV Guide Int'l, Inc.*,
   No. 05-CV-8510 DAB, 2007 WL 438088 (S.D.N.Y. Feb. 8, 2007) ........14

*Edge Mgmt. Consulting, Inc. v. Blank*,
   25 A.D.3d 364 (1st Dept. 2006) ............................................................10

*Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A.*,
   2007 WL 950134 (S.D.N.Y. Mar. 28, 2007) ..........................................13

*Fin. Techs. Int'l, Inc. v. Smith*,
   247 F. Supp. 2d 397 (S.D.N.Y. 2002) ....................................................18

*First Union National Bank v. Tecklenburg*,
   2 A.D.3d 575 (2d Dep't 2003) ................................................................14

*Gottlieb v. Kenneth D. Laub & Co.*,
   82 N.Y.2d 457 (1993) ............................................................................18

*Harris v. Seward Park Housing Corp.*,
  79 A.D.3d 425 (1st Dep't 2010) ..................................................................................6

*Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc.*,
  723 F. Supp. 976 (S.D.N.Y. 1989)..............................................................................13

*Levitin v. PaineWebber, Inc.*,
  159 F.3d 698 (2d Cir. 1998)..........................................................................................5

*Malinowski v. Wall Street Source, Inc.*,
  No. 09 CIV 9592 (PAE), 2012 WL 279450 (S.D.N.Y. Jan. 31, 2012) ....................18

*Mandarin Trading Ltd. v Wildenstein*,
  16 N.Y. 3d 173 (2011) ................................................................................................19

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  289 F.Supp.2d 416 (S.D.N.Y.2003)..............................................................................4

*Mill Fin. LLC v. Gillett*,
  980 N.Y.S.2d 276 (Sup. Ct. 2013) ................................................................................8

*Monagle v. Scholastic, Inc.*,
  No. 06-cv-14342, 2007 WL 766282 (S.D.N.Y. Mar. 9, 2007)..................................18

*Nader v. ABC Television, Inc.*,
  150 Fed. Appx. 54 (2d Cir. 2005)..............................................................................8, 9

*Pachter v. Bernard Hodes Grp. Inc.*,
  10 N.Y.3d 609 (2008) ................................................................................................17

*Premier Growth Fund v. Alliance Capital Mgmt.*,
  435 F.3d 396 (3d Cir. 2001)..........................................................................................4

*RJ Capital v. Lexington Capital Funding III, Ltd.*,
  No. 10 Civ. 24 PPG, 2011 WL 3251554 (S.D.N.Y. July 28, 2011) .....................13, 15, 19, 20

*Sazerac Co., Inc. v. Falk*,
  861 F.Supp. 253 (S.D.N.Y. 1994)..............................................................................12

*Schwartz v Miltz*,
  77 A.D.3d 723 (2d Dep't 2010)..................................................................................14

*Strauss v. Belle Realty Co.*,
  98 AD2d 424 (2d Dep't 1983)....................................................................................10

*United Intern. Holdings, Inc. v. Wharf (Holdings), Ltd.*,
  988 F.Supp. 367 (S.D.N.Y. 1997)..........................................................................11, 12

*Woori Bank v. Citigroup Global Markets, Inc.*,
   No. 12-cv-3868 (KBF), 2014 WL 3844778 (S.D.N.Y. 2014), *rev'd on other*
   *grounds* 2015 WL 1810835 (2nd Cir. Apr 22, 2015*)* .................................................4

*Zolotar v. New York Life Ins. Co.*,
   172 A.D.2d 27 (1st Dept. 1991)...........................................................................19

**Statutes**

New York Labor Law Article 6 ...................................................................16, 18

New York Labor Law § 190 ................................................................................16

New York Labor Law § 190(c)............................................................................17

New York Labor Law § 191 ................................................................................17

New York Labor Law § 193 ................................................................................17

New York Labor Law § 198-c .............................................................................17

**Other Authorities**

Federal Rule of Civil Procedure 8(a)....................................................................5

Federal Rule of Civil Procedure 12(b)(6) .............................................................5

## PRELIMINARY STATEMENT

This case arises out of a Consulting Agreement dated January 17, 2011 (the "Agreement") between Plaintiff Eric Cantona ("Cantona") and Defendant New York Cosmos, LLC (the "Cosmos").  Cantona along with two affiliated organizations, Olympica Sports Management ("Olympica") and Joel Cantona Organisation ("Joel Cantona," collectively with Cantona and Olympica, the "Plaintiffs") bring suit under various causes of action stemming from alleged improprieties and breaches by the Cosmos under the Agreement.

All of Plaintiffs' claims fail and should be dismissed.  The Agreement contained a morals clause that was obtained by the Cosmos precisely because Cantona had a reputation as a wild card.  True to form, Cantona was fired on March 19, 2014 pursuant to the morals clause, after he was arrested on suspicion of assault in an incident internationally reported in various media.  The Cosmos paid all Plaintiffs all amounts owed to them at the time of Cantona's termination, or shortly thereafter, pursuant to the pertinent clauses of the Agreement.  While Cantona alleges that he had "Good Reason" to terminate the Agreement prior to his arrest, he chose not to terminate the Agreement, hoping perhaps that his purported equity interest might grow.  The fact that he was still employed by the Cosmos at the time of his arrest, and therefore still bound by the Agreement, triggered his dismissal pursuant to the Agreement's morals clause when he created headlines generating negative attention for himself and the Cosmos.

## I.       FACTUAL BACKGROUND

No party disputes Eric Cantona's status as an international soccer star.  And apparently no party disputes Cantona's past off-the-field misconduct and antics, including an assault perpetrated upon a spectator during a game in England.[1]  Compl. ¶ 2 (describing Cantona as a

---

[1] "Eric Cantona Dropkicks A Fan" https://www.youtube.com/watch?v=bQWUgxVoXHM.

"world renowned football ('soccer') player with a colorful past.").  However, seeing potential in Cantona as a promoter and brand ambassador for the revived version of the storied Cosmos, Cantona and the Cosmos signed the Agreement on January 17, 2011.  The Agreement was to end on December 31, 2014.  Compl., Ex. A at 1.1.

Per the Agreement, Cantona was to be paid $800,000, $900,000, $1,000,000 and $1,200,000 for the four years that the Agreement was effective (the "Salary").  He also was to be given an equity ownership in the Cosmos if the Cosmos were to be admitted to "any . . . men's outdoor professional soccer league in the United States," (the "Equity Interest").  *Id*. at 2.4-2.5.  The Cosmos joined the North American Soccer League, an outdoor men's league, in the fall of 2013.

Contrary to the allegations in the Complaint, the Agreement establishes that Cantona was not "at the helm" of the team's soccer operations.  Compl. ¶ 23.  Though titled a "Director of Soccer," Cantona had limited responsibilities in that regard.  Cantona had some responsibility with respect to just two Cosmos exhibition games held in 2011 along with advisory responsibilities that were largely undefined.  Compl., Ex. A at 4.2, 4.3.1-4.3.6.  In the event the Cosmos were admitted to an outdoor men's soccer league, Cantona's soccer-related responsibilities were left further undefined, only "to be negotiated in good faith."  *Id.* at 4.4.

Rather, Cantona's primary role with the Cosmos related to promotional appearances and Cantona's role as a brand ambassador for the Cosmos.  *See id.* at 5.1-5.8.  This included public relations responsibilities in connection with his appointment, possible participation in an Asian promotional tour, covenants regarding the Cosmos' ability to use the "Cantona Likeness" in text, writings, audio recordings, digital recordings, photographs, film, DVDs and the Internet, and

personal appearance requirements. *Id.* Indeed, the bulk of Cantona's responsibilities under the Agreement relate to his role as a promoter and brand ambassador.

The Agreement also provided the parties with various options governing how to terminate the Agreement. Upon following the proper procedures, Cantona could terminate for "Good Reason," thereby earning him the entirety of the Salary and the Equity Interest. That which he was not already owed was to be considered the "Termination Penalty."

Meanwhile, if Cantona's conduct descended to the level of his "colorful" past, a possible course of events contemplated by the Cosmos' inclusion of the morals clause, the Cosmos could terminate the Agreement for "Cause" pursuant to that clause. The clause allows for termination by the Cosmos for, *inter alia*, "conduct, which in the reasonable opinion of the New York Cosmos, brings Mr. Cantona, the New York Cosmos or any subsidiary or Affiliate of the New York Cosmos or its brand into material disrepute." *Id.* at 8.1.3(ii). In such an event, the Cosmos had to give Cantona notice of his termination in writing "and a reasonable opportunity of not less than ten (10) days to cure the condition giving rise to the alleged breach or failure," but only in those instances in which such a breach or failure "is curable." *Id.* The Agreement defines the actual date of that termination for Cause as the "Termination Date." *Id.* at 8.2.

With respect to payment, upon termination of the Agreement under the morals clause (or any other part of Section 8.1 of the Agreement), the Cosmos:

> shall only be required to pay to Mr. Cantona such portion of the [Salary] that has already accrued and remains unpaid through the effective date of the termination and shall have no other obligation whatsoever to Mr. Cantona other than the reimbursement of previously incurred expenses… [and] in the event Mr. Cantona shall have been granted the Equity Interest prior to such termination, the Equity Interest shall be immediately cancelled. *Id.*

With respect to Olympica and Joel Cantona, the Agreement is also quite clear:

> In connection with the execution of th[e] Agreement, the New
> York Cosmos shall pay Olympica Sports Management and Joel
> Cantona Organisation a fee in the aggregate amount of the
> U.S dollar equivalent of €400,000.  Such fee shall be payable over
> the course of the Term in equal quarterly installments in arrears
> within ten (10) days following the New York Cosmos receipt of an
> invoice therefor; provided, however, that such fee shall
> immediately cease to be due upon the termination of this
> Agreement pursuant to Section 8 and no further amounts thereof
> shall be payable following the Termination Date.  *Id*. at 11.2.

However, the only parties to the Agreement are Cantona and the Cosmos.  *Id*. (signature page).  And the Agreement is just as clear that "[n]either party shall have the right or power to assign its rights or powers hereunder without the express written consent of the other, except that the New York Cosmos may assign or otherwise transfer its rights and obligations under this Agreement to an Affiliate.  Any attempt to do so without such consent shall be null and void and shall give the other party the right to cancel and terminate this Agreement."  *Id*. at 11.11.

It was widely reported that Cantona was arrested on March 12, 2014 for suspicion of assault.[2]  Compl., Ex. B.  Among other things, sources reported that Cantona "was drinking outside a pub with a mystery brunette" and "lashed out" after "being spotted by a paparazzo."  Primps Decl., Ex. D.  It was reported that Cantona punched a photographer in the face and was subsequently arrested for suspicion of assault.  *Id.*  Seven days later, on March 19, 2014, the

---

[2] Several articles are attached to the accompanying Declaration of William G. Primps ("Primps Decl.").  It is well-settled that, on a motion to dismiss, the Court may take judicial notice of published articles if used to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."  *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2001); *Woori Bank v. Citigroup Global Markets, Inc.*, No. 12-cv-3868 (KBF), 2014 WL 3844778, at *8 n.18 (S.D.N.Y. 2014) ("On a motion to dismiss, the Court may take judicial notice of publicly available news articles and of public complaints in other proceedings."), *rev'd on other grounds* 2015 WL 1810835 (2nd Cir. Apr 22, 2015); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F.Supp.2d 416, 425 n. 15 (S.D.N.Y.2003) ("The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment.").  At this stage in the litigation, the Cosmos do not seek to prove the contents of these articles or demonstrate exactly what happened during the alleged assault.  Rather, these articles are being used to demonstrate that the alleged incident had very quickly entered the public domain and its contents were visible to a global audience.  The negative impressions created by these articles, whether true or not, underscores the reasonableness of the Cosmos' opinion that Cantona had generated material disrepute for the Cosmos and its brand.

Cosmos exercised the morals clause in the Agreement and terminated Cantona.  Compl., Ex. B.

The Cosmos sent $488,710.00, representing the amount of the Salary that had accrued as of

March 19, 2014, by wire transfer to Cantona.  Cantona notes receipt of this amount in the

Complaint.  Compl. ¶¶ 27-28.

## II.    ARGUMENT

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts

evaluate the sufficiency of the complaint under the approach set forth in *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009).  A plaintiff's legal conclusions and "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements," are not entitled to the

assumption of truth and are by themselves insufficient to state a claim.  *Id.* at 678.  Only well-

pleaded factual allegations are assumed to be true and then analyzed to "determine whether they

plausibly give rise to an entitlement to relief."  *Id.* at 679.  The allegations in the complaint must

thus meet a standard of "plausibility."  *Id.* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564

(2007); *see also* Fed. R. Civ. P. 8(a).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Where, as in this case, a contract is integral

to the complaint, it is well-settled that the court may consider the contract in deciding the merits

of a Rule 12(b)(6) motion.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir.

2002); *Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 702 n.4 (2d Cir. 1998).[3]

---

[3] There appears to be some confusion as to whether Cantona is a domiciliary of New York and whether the Cosmos are citizens of a foreign state.  Compl. ¶ 15.  For the purpose of this motion to dismiss, the Cosmos operate under the assumption that this was an oversight and diversity jurisdiction exists in this case.

### A.  Plaintiffs' Breach of Contract Claim Should Be Dismissed

     i.  <u>The Cosmos Were Not in Breach of the Agreement and Cantona Also Waived His Breach of Contract Claim Relating to Any Nonpayment By the Cosmos</u>

New York law governs the Agreement as well as "all disputes relating to or arising from th[e] Agreement."  Compl., Ex. A. at 11.9.  Under New York law, to properly plead a cause of action for breach of contract, a plaintiff must plead "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages."  *Harris v. Seward Park Housing Corp.*, 79 A.D.3d 425, 426 (1st Dep't 2010).

Cantona's First Cause of Action alleges that the Agreement was breached by the Cosmos when they failed to pay him starting in September 2013.  Compl. ¶ 27.  The Agreement allows Cantona to terminate the Agreement for "Good Reason."  Section 8.4.2 of the Agreement defines Good Reason as:

> any of the following (without Mr. Cantona's written consent):  (i) a material decrease in Mr. Cantona's cash compensation or a failure by the New York Cosmos to pay any material compensation due and payable to Mr. Cantona in connection with this Agreement, (ii) any material diminution of the responsibilities with the New York Cosmos (except for reporting responsibilities), authorities or duties of Mr. Cantona from those in effect as of the date of this Agreement; or (iii) a material breach by the New York Cosmos of its obligations under this Agreement.

A failure to make a timely payment does not *by itself* put the Cosmos in breach of the Agreement.  That is because the Agreement provides the Cosmos with various opportunities to cure anything Cantona claims would constitute Good Reason for termination.  Cantona was required to give the Cosmos notice of his grievance within 30 days of its occurrence and the Cosmos had at least thirty days to cure from the time of notice (or in some cases, even more).  *Id.* at 8.4.2.  In short, Cantona had an obligation to provide notice and the Cosmos were provided an opportunity to cure.  During that window of time, neither party was in breach.

Moreover, even if Cantona followed the notice and cure requirements of Section 8.4.2, there was another set of procedures that Cantona had to follow before the Cosmos could be considered in breach of the Agreement.  The Agreement is crystal clear in prescribing the one method by which an agreement could be terminated for Good Reason.  Section 8.3 of the Agreement states that "[u]pon . . . any termination of this Agreement by Mr. Cantona for Good Reason [as defined in Section 8.4.2], and the receipt by the New York Cosmos of a general release in form and substance reasonably satisfactory to the New York Cosmos executed by Mr. Cantona," Cantona would have terminated the Agreement in a manner "that bec[ame] effective and irrevocable no later than fifty-five (55) days following the Termination Date."  At that point, the Cosmos would owe Cantona the Termination Penalty.  *Id.* at 8.3.  Thus, Cantona *still* had to submit the release, it *still* had to be in a form reasonably satisfactory to the Cosmos and there was *still* a possible 50-day window where the termination was not yet effective or irrevocable, before the Cosmos were actually in breach of the Agreement for failure to pay all amounts owed to Cantona as well as the Termination Penalty.

Cantona's claims in the instant suit are exactly the sort of allegations that would constitute "Good Reason" under Section 8.4.2 of the Agreement.  At that point, he should have invoked the provisions that would have triggered termination for Good Reason.  We need not look any further to know what Cantona chose.  "Mr. Cantona chose not to terminate the contract despite the 'good cause' and thus obligated Cosmos to pay the liquidated damages pursuant to the agreement."  Compl. ¶ 30.  Thus, Cantona chose to remain bound by the Agreement, perhaps because of his hope for potential growth in his purported Equity Interest.  Though his counsel sent letters threatening legal action, none of the steps required to trigger a breach by the Cosmos were undertaken.  Thus, the parties' rights under the Agreement would continue to be governed

by it unless or until something triggered termination and the resulting set of obligations for both sides flowing from such termination.  In choosing his course of conduct, Cantona remained bound by the Agreement, thereby assuming the possibility any adverse conduct by him could give rise to termination for Cause by the Cosmos.

The Cosmos were well within their rights to effect a termination for Cause effective March 12, 2014, the date Cantona was reportedly arrested for assault.  Compl., Ex. B.  That made March 12, 2014 the effective Termination Date.  Compl., Ex. A., at 8.2.  As of that date, the Cosmos had "no further obligation" whatsoever to Mr. Cantona other than paying him the prorated amount of his Salary and other reimbursement expenses.  *Id*.  Cantona acknowledges that those items were paid.  Compl. ¶ 28.  The Equity Interest was cancelled.  Compl., Ex. A at 8.2.  Cantona was owed nothing further.

Alternatively, Cantona waived his breach of contract claim. "Waiver is the intentional relinquishment of a right, made with both knowledge of its existence and the intent to relinquish that right." *Mill Fin. LLC v. Gillett*, 980 N.Y.S.2d 276, (Sup. Ct. 2013) (internal citations omitted).  Waiver "should not be lightly presumed." *Id*. (internal citations omitted).  The burden of proving the defense of waiver is on the party asserting the defense.  *Id*.

Here there is no need to presume.  Cantona pleads his own waiver in the Complaint: "Mr. Cantona **chose not to terminate the contract** despite the **'good cause'** and thus obligated the Cosmos to pay the liquidated damages pursuant to the agreement."  Compl. ¶ 30 (emphasis added).  Cantona's choices constitute waiver, and as described in the next section, paved the way for his own termination for Cause stemming from the morals clause of the Agreement.

      ii.     <u>Cantona Was Properly Terminated Pursuant to the Morals Clause of the</u>
<u>Agreement and is Owed No Further Money</u>

"Morals clauses have long been held valid and enforceable [and] [t]here is no indication

that New York departs from the generally applicable law on this point."  *Nader v. ABC*

*Television, Inc.*, 150 Fed. Appx. 54, 57 (2d Cir. 2005) (unpublished).  In *Nader*, the Second

Circuit found that an actor's termination for arrest pursuant to a contract's morals clause was an

entirely valid basis to terminate an agreement and did not constitute a breach of contract.

Though *Nader* was decided in the summary judgment context, its holding allows this

Court to decide this case as a matter of law.  Here, the morals clause in the Agreement allows the

Cosmos to terminate for cause if Cantona engaged in "conduct, which in the reasonable opinion

of the New York Cosmos, brings Mr. Cantona, the New York Cosmos, or any subsidiary or

Affiliate of the New York Cosmos or its brand into material disrepute."  Compl., Ex. A at

8.1.3(ii).  Thus, it is the Cosmos opinion that controls whether Cantona's conduct created

material disrepute for the purposes of the Agreement, so long as that opinion was a reasonable

one.

Following the alleged incident, a plethora of widely-circulated news outlets almost

instantly picked up on the story and several explicitly noted Cantona's role with the Cosmos.

Primps Declaration, Ex. A ("*Eric Cantona arrested and cautioned over assault in London*")

("Cantona, who took on a role as director of football for the revived New York Cosmos in 2011,

said then that he preferred not to dwell on the past) (Cantona with Cosmos logo in background);

Ex. B ("*Eric Cantona arrested and cautioned over assault in London*") ("He…served as director

of soccer for the New York Cosmos between 2010 and 2012"); Ex. C (BBC News- "*Eric*

*Cantona cautioned for common assault in north London*"); Ex. D ("*Ooh, aargh Cantona!*

*Married soccer star held by police after punching photographer who spotted him at the pub with*

*brunette*").  Given this avalanche of instant, negative press, there can be no doubt that the Cosmos formed a reasonable opinion.

The inclusion of the morals clause is no accident.  Nor is it some fortuitous circumstance that was used as a pretext.  It is an express provision of the contract contemplated to protect the Cosmos with respect to an apparently reformed but known wild card in Cantona, whose chief purpose under the Agreement was to serve as a reputable brand ambassador for the Cosmos.  The clause served as insurance for the Cosmos in case Cantona's behavior ever relapsed to his "colorful" days as a player.  The inclusion of the morals clause proved prescient on March 12, 2014, when Cantona's purported conduct in London generated exactly the kind of negative press that concerned the Cosmos at the time they entered into the Agreement.

Thus, given Cantona's waiver and deliberate decision not to act on what he now alleges to be "Good Reason" under the Agreement, Cantona's termination was appropriate pursuant to the Agreement's morals clause.  Cantona already recognizes receipt of the Salary owed through the Termination Date as defined in the Agreement.  Compl. ¶¶ 27-28, Ex. A. at 8.2.  Thus, he is owed nothing further.

     iii.    <u>Plaintiffs Joel Cantona and Olympica Fail to Properly Plead a Cause of Action For Breach of Contract</u>

Plaintiffs Joel Cantona and Olympica seek recovery based on their status as third party beneficiaries.  Compl. ¶¶ 18, 19, 43.  The Agreement does not contemplate enforcement by these two Plaintiffs.  Furthermore, their threadbare recitals do not properly plead a cause of action.

"One who seeks to recover as a third-party beneficiary of a contract must establish that a valid and binding contract exists between other parties, that the contract was intended for his or her benefit, and that the benefit was direct rather than incidental."  *Edge Mgmt. Consulting, Inc. v. Blank*, 25 A.D.3d 364, 368 (1st Dept. 2006).  However, "[e]ven when the contracting parties

specifically intend to confer benefits on a third party, not all consequential damages which flow from a breach of the contract are recoverable by the third party." *Strauss v. Belle Realty Co.*, 98 AD2d 424, 427 (2d Dep't 1983).  Thus, "[t]he contract must evince a discernible intent to allow recovery for the specific damages to the third party that result from a breach thereof before a cause of action is stated." *Id.*  The purported third-party beneficiaries must carry this burden.  *Id.*

Far from a discernible right to allow recovery, the Agreement does not contemplate enforcement by Joel Cantona and Olympica at all.  Compl., Ex. A (signature page).  The only signatories are the Cosmos and Cantona.  *Id.*  The various enforcement provisions of the Agreement only discuss Cantona and the Cosmos.  *Id.* at 11.5-11.11.  The Agreement only contemplates two parties:  Cantona and the Cosmos.  *See id.* at 11.11.

Thus, particularly important in this context is the non-assignability clause in the Agreement which prevents Joel Cantona and Olympica from enforcing the Agreement.  *See id.* ("Neither party shall have the right or power to assign its rights or powers hereunder without the express written consent of the other, except that the New York Cosmos may assign or otherwise transfer its rights and obligations under this Agreement to an Affiliate.  Any attempt to do so without such consent shall be null and void and shall give the other party the right to cancel and terminate this Agreement.").  It is well-settled that such non-assignability clauses prevent third-party beneficiary claims.

In *United Intern. Holdings, Inc. v. Wharf (Holdings), Ltd.*, 988 F.Supp. 367, 373 (S.D.N.Y. 1997), the district court considered a similar scenario and found that the non-assignment clause negated any rights of enforcement by the purported third-party beneficiaries. There, much like here, the non-assignment clause stated that "no party may transfer 'any interest or obligation' under the [] Agreement without the prior written consent of the others."  *Id.*  The

11

court held that this provision forbade the contracting party from assigning "the right to enforce the [] [a]greement or sue for breach" without prior consent from the opposite party. *Id*. It further noted that "[n]on-assignability clauses have been held to negate third-party beneficiary status, even where assignment was permitted with prior written approval." *Id*.

Another case illustrating this proposition is *Sazerac Co., Inc. v. Falk*, 861 F.Supp. 253 (S.D.N.Y. 1994). In that case, Sazerac, a distributor of alcoholic beverages, brought suit against two defendants who were both majority owners of another alcohol distributor. *Id*. at 255. Sazerac and the defendants both entered into agreements with a Japanese alcohol distributor named Takara. Sazerac "contends that at the same time [an agreement] was executed between [d]efendants and Takara, a 'concurrent' sale by Takara to the Sazerac of certain [] assets . . . was formalized in an [] agreement." *Id*. at 256. Sazerac further "alleg[ed] that the [d]efendants were aware that Takara intended to sell the [assets] to Sazerac immediately upon the execution of the [agreement] by [the defendants] and Takara." *Id*. Thus, Sazerac maintained it was a third-party beneficiary to the defendants' agreement with Takara.

The court in *Sazerac* dismissed the third-party beneficiary claim, because, *inter alia*, the anti-assignment provision in the defendants' agreement with Takara barred Sazerac from asserting such a claim. The anti-assignment provision in that case read: "Neither this Agreement nor any right, remedy, obligation or liability arising hereunder or by reason hereof shall be assignable by any party to this Agreement without the prior written consent of the other parties." *Id*. at 258. The Court held that "[s]imilar language has been held to bar third party beneficiary claims in similar circumstances." *Id*. (collecting cases).

Cantona never obtained consent to assign any enforcement rights to Joel Cantona and Olympica and does not plead that he did. Thus, much like in *Sazerac* and *United Intern.*

*Holdings, Inc.*, the anti-assignment clause bars Joel Cantona and Olympica's third-party

beneficiary claims in this case.  They therefore ought to be dismissed with prejudice.

Moreover, Olympica and Joel Cantona only make a "threadbare" assertion that they are

owed €80,293.89.  Compl. ¶ 34.  They do not plead how they arrived at that number.

Section 11.2 of the Agreement is clear that upon the Termination Date, the fees owed to Joel

Cantona and Olympica "cease to be due."  Compl., Ex. A at 11.2.  It is unclear if these two

Plaintiffs arrive at their damages figure because they are calculating for amounts owed beyond

March 12, 2014, which serves as the Termination Date under the Agreement.  *See id.* at 8.2.,

Compl. Ex. B.  Section 11.2 of the Agreement establishes that they are owed nothing beyond the

Termination Date.  Given that their claim in the First Cause of Action turns entirely upon how

much they are owed as of a specific date, their failure to do more than specify the amount of the

alleged injury amounts to a failure to state a cognizable claim.

As a result, Plaintiffs' First Cause of Action should be dismissed with prejudice.

### B.  Cantona's Claim For Breach of the Covenant of Good Faith and Fair Dealing Should Be Dismissed

The Second Cause of Action is a claim for breach of the implied covenant of good faith

and fair dealing brought solely by Plaintiff Cantona.  Compl. ¶ 45.  "Every contract governed by

New York law . . . contains an implied covenant to perform the contract fairly and in good faith."

*Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc.*, 723 F. Supp. 976, 991 (S.D.N.Y. 1989)

(citing *Rowe v. Great Atlantic & Pacific Tea Co.*, 412 N.Y.S.2d 827, 830 (N.Y. 1978)).

It is well-settled that "[a] claim for breach of the implied covenant of good faith and fair

dealing—like a claim for unjust enrichment—is not proper when a written agreement governs

the subject matter of the claim."  *RJ Capital v. Lexington Capital Funding III, Ltd.*, No. 10 Civ.

24 PPG, 2011 WL 3251554, at *13 (S.D.N.Y. July 28, 2011).  Thus, "[a] claim for breach of the

implied covenant can be maintained simultaneously with a breach of contract claim 'only if the damages sought by the plaintiff[s] for breach of the implied covenant are not 'intrinsically tied to the damages allegedly resulting from breach of contract.''" *Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A.*, 2007 WL 950134, at *6 (S.D.N.Y. Mar. 28, 2007) (quoting *Canstar v. J.A. Jones Constr. Co.*, 212 A.D.2d 452 (1st Dep't 1995)).[4]  "In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative[.]" *Echostar DBS Corp. v. Gemstar–TV Guide Int'l, Inc.*, No. 05-CV-8510 DAB, 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007) (quotation omitted).  Thus, courts dismiss claims for breach of the implied covenant of good faith and fair dealing when they are "duplicative of the breach-of-contract claim" and "both claims arise from the same set of facts and seek the identical damages for each alleged breach." *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426 (1st Dep't 2010).

Here, Cantona expressly brings his Second Cause of Action out of the same set of facts as his breach of contract claim, thereby intrinsically tying his damages to the alleged breach of contract.  Compl. ¶ 46 ("As a result of Defendant's wrongful conduct and **breach**, Cantona has

---

[4] The Complaint states that the Cosmos are "estopped from asserting any conditions in the Agreement as a bar to Cantona's recovery" in this Cause of Action. Compl. ¶46.  In any event, Plaintiffs fail to properly plead equitable estoppel. "The elements of estoppel are, with respect to the party estopped,  (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." *First Union National Bank v. Tecklenburg*, 2 A.D.3d 575, 577 (2d Dep't 2003) (internal citations omitted).

Here, Cantona fails to plead that there was any false representation or concealment of material fact by the Cosmos; he simply pleads that there was nonpayment and bad faith.  Furthermore, Cantona fails to plead that there was any intention by the Cosmos for Cantona to "rely upon" any false statement or false representation.  Lastly, Cantona fails to plead that there was reliance on his part by any false statement or representation.  *See Schwartz v Miltz*, 77 A.D.3d 723, 725 (2d Dep't 2010) ("[T]he doctrine of equitable estoppel is not applicable [where] there was no allegation by the plaintiff that the defendant's conduct amounted to a false representation or concealment of material fact.").  Moreover, a Plaintiff must plead "an act of deception, separate from the ones for which they sue, on which an equitable estoppel could be based."  *Corsello v Verizon N.Y., Inc.*, 18 N.Y.3d 777, 789 (2012).  Cantona has not done so here.

suffered consequential damages . . . which would have become due in the ordinary course of business but for Defendant's malicious, inequitable conduct and **breach of contract**.") (emphasis added).  Cantona alleges he is owed $961,290.00 in "earned compensation" in his Second Cause of Action.  Compl. ¶ 46.  He alleges that an identical amount is owed for breach of contract.  *Id*. ¶ 10.  This cause of action must be dismissed, because there is no contest over the validity of the Agreement, and Cantona's good faith and fair dealing claim arises out of the same set of facts as his breach of contract claim.

Moreover, "where the instrument contains an express covenant in regard to any subject, no covenants are to be implied in respect to the same subject."  *See RJ Capital*, 2011 WL 3251554, at *13; *Burr v. Stenton*, 43 N.Y. 462, 464 (1871).  Here, the Agreement contains multiple good faith provisions which supersede the implied covenant of good faith and fair dealing.  Compl., Ex. A at 4.4, 5.4, 5.5, 5.7 and 11.12.  The Agreement also defines "Good Reason" for Cantona to terminate the Agreement as, *inter alia*, "a failure by the New York Cosmos to pay any material compensation due and payable to Mr. Cantona in connection with this Agreement."  *Id*. at 8.4.2.  Moreover, the Agreement provides an express set of procedures to effect such a termination.  *Id*. at 8.3.

With respect to the Cosmos, the Agreement provides an express covenant to terminate Cantona for Cause.  As stated previously, the Cosmos could terminate the Agreement for, *inter alia*, "conduct, which in the reasonable opinion of the New York Cosmos, brings Mr. Cantona, the New York Cosmos or any subsidiary or Affiliate of the New York Cosmos or its brand into material disrepute."  *Id*. at 8.1.3(ii).  Thus, by its express terms, the contract gives the Cosmos discretion.  Whether Cantona's conduct created material disrepute for the Cosmos was subject

only to the Cosmos' reasonable opinion.  That standard supersedes any implied standards Plaintiffs argue exist in this instance.

Thus, by contemplating and incorporating provisions for "good faith," prescribing a set of procedures to effect a termination by Cantona for "Good Reason," and prescribing for the Cosmos a set of procedures to effect a termination for "Cause," the Second Cause of Action is superseded by the express provisions of the Agreement.  It therefore ought to be dismissed with prejudice.

### C. Plaintiffs' Labor Law Article 6 Claim Should Be Dismissed Because Plaintiffs Are Not Employees and Fail to Assert a Substantive Cause of Action

Plaintiffs' Fourth Cause of Action for unpaid wages under New York Labor Law Article 6 should be dismissed for failure to state a cause of action.

First and foremost, none of the Plaintiffs is or was an "employee" of the Cosmos. Cantona was an independent contractor and not an employee.  Cantona negotiated for and agreed to that designation when he signed the "Consulting Agreement," which plainly states that "[n]othing in this Agreement shall be construed as to create a[n] . . . employment relationship between the parties."  Compl., Ex. A. at 9.  Independent contractors are not subject to the wage protections of the New York Labor Law, those are reserved for employees only.  *Griffith v. Fordham Fin. Mgmt, Inc.,* No. 12 Civ. 1117 (PAC), 2015 WL 1097327, at *3 ("The NYLL covers employees, but does not apply to independent contractors.")

"[T]he critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198 (2003). Factors to be considered include "whether the worker (1) worked at his own convenience, (2)

was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Id.*

The Agreement establishes that Cantona was an independent contractor.  The Agreement gives Cantona control over his business affairs, explicitly stat[ing] that Cantona may "undertake any business activity or have any business interest… unrelated to the New York Cosmos" with some limited exceptions.  Compl., Ex. A at 4.1.  He does not work on the Cosmos' schedule.  *Id.* at 5.2, 5.4.  In fact, the Cosmos were required to give Cantona advance notice of appearances and work in good faith to resolve scheduling conflicts.  *Id.* at 5.4, 5.7.  Per the Agreement, Cantona did not have to make appearances or participate in public relations activities if they conflicted with any dates relating to his endorsement deals.  *Id.*

Even if Cantona's after the fact, self-serving claim that he was not an independent contractor but rather an employee of the Cosmos is considered, his status would prevent him from taking advantage of the wage protections of Article 6, including the protections set forth in sections 191, 198-c and 193.  If Cantona was in fact an employee of Cosmos and not an independent contractor, his status would have been akin to one serving in an executive, managerial, or administrative capacity.  *See* Compl. ¶¶ 2, 23, 27.  This takes him out of the ambit of Section 191 of the Labor Law, which governs the timing of wages.  *See Pachter v. Bernard Hodes Grp. Inc.*, 10 N.Y.3d 609, 616 (2008) ("employees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law").  Cantona's status and earnings prevent him from relying on Section 198-c, which does not apply to anyone in an executive administrative or professional role earning more than $900 a week.  N.Y. Lab. Law § 198-c.  Finally, Section 193 only applies to wage deductions and not future wages lost.  N.Y. Lab. Law. § 193.  Here, Cantona admits he has been paid his Salary in full through the

Termination Date.  Compl. ¶ 28.  Thus, Cantona may not rely on any of these provisions to support his Labor Law claim.

Joel Cantona and Olympica were not hired for employment by the Cosmos and are therefore not employees.[5]  Moreover, the "fee" that they were paid under the Agreement does not constitute "wages" as that term is defined in Article 6.[6]  These two Plaintiffs are just third-party beneficiaries who did not perform any "labor" or "services" under the Agreement and who are not entitled to receive "wages."  As such heir claims are subject to dismissal.

Even if Plaintiffs were employees of the Cosmos, which they were not, Plaintiffs fail to properly plead a cognizable cause of action under the New York Labor Law.  Rather than citing to a single substantive provision of Article 6, Plaintiffs cite to the whole article.  Compl. ¶ 57.  The only actual provision in Article 6 that is cited is Section 198.1, under which Plaintiffs seek liquidated damages, attorneys' fees and costs.  *Id*. at ¶ 58.  However, it is well-settled that Section 198 "provides no substantive cause of action at all."  *Monagle v. Scholastic, Inc.*, No. 06-cv-14342, 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007).  Moreover, Plaintiffs are attempting to invoke the liquidated damages and fees provisions of Section 198.1 in a breach of contract action unrelated to any employment agreement.  However, "[t]he remedies of section 198 may not be invoked when the claim is in substance a contract claim to enforce the payment of obligations other than statutory wages."  *Fin. Techs. Int'l, Inc. v. Smith*, 247 F. Supp. 2d 397, 413 (S.D.N.Y. 2002); *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 462 (1993).

This case is analogous to *Malinowski v. Wall Street Source, Inc.*, No. 09 CIV 9592 (PAE), 2012 WL 279450 (S.D.N.Y. Jan. 31, 2012), in which the Plaintiff alleged that he was an

---

[5] Under N.Y. Lab. Law. § 190(2), "[e]mployee means any person employed for hire by an employer in any employment."

[6] "Wages" can only be earned for "labor or services" rendered.  N.Y. Lab. Law. § 190(c).

"employee" and that one of the defendants was an "employer" under Labor Law Article 6.  *Id*. at

*2.  However, much like the instant Plaintiffs, the plaintiff in *Malinowski* was "indistinct as to

which part or parts of Article 6 he relies on" alleging only that "defendants owe wages to him

'pursuant to Article 6 of the New York State Labor Law'" while "citing no section of that

Article."  *Id*.  In a letter brief, Malinowski stated that he was relying on Section 198(3) of the

Labor Law.  *Id*.  The Court promptly dismissed the Labor Law claim, noting that Section 198

provides no substantive cause of action.  *Id*. (citing *Gottlieb v. Kenneth D. Laub & Co.*, 82

N.Y.2d 457, 462 (1993)).

Since Plaintiffs are not and were not employees of the Cosmos and plead no cognizable

substantive cause of action under Labor Law Article 6, the Fourth Cause of Action should be

dismissed with prejudice.

**D.      Plaintiffs' Claims For Unjust Enrichment Should Be Dismissed**

In the Third Cause of Action, all three Plaintiffs assert an unjust enrichment claim against

the Cosmos.  Compl. ¶¶ 49-50.  In the Fifth Cause of Action, Olympica asserts an unjust

enrichment claim against the Cosmos.  *Id*. ¶ 62.  In the Sixth Cause of Action, Joel Cantona

asserts an unjust enrichment claim against the Cosmos.  *Id*. ¶ 67.  All of these causes of action

are barred because there is no dispute that the Agreement governs the disputes between the

Parties in all respects. *Id*. ¶¶ 60, 65.

i.      Plaintiff Cantona's Cause of Action for Unjust Enrichment Should Be
          Dismissed

To properly plead a claim of unjust enrichment, a plaintiff must allege "that (1) the other

party was enriched, (2) at that party's expense, and (3) that it is against equity and good

conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading

Ltd. v Wildenstein*, 16 N.Y. 3d 173, 182 (2011) (internal citations omitted).

However, "[u]njust enrichment is a quasi contract claim." *Zolotar v. New York Life Ins. Co.*, 172 A.D.2d 27, 33 (1st Dept. 1991) (quoting *Feigen v. Advance Capital Management Corp.*, 150 A.D. 2d 281, 283 (1st Dept. 1989)).  "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield*, 448 F.3d 573, 587 (2d Cir. 2006) (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388–89 (1987). "Where no party disputes the existence of a contract governing the dispute, recovery on a quasi-contract theory is not permitted." *RJ Capital v. Lexington Capital Funding III, Ltd.*, No. 10 Civ. 24 PPG, 2011 WL 3251554, at *13 (S.D.N.Y. July 28, 2011).  Cantona alleges he is owed $961,290.00 in "compensation" in his Third Cause of Action.  Compl. ¶ 49.  He alleges that an identical amount is owed for breach of contract.  *Id.* ¶ 10.  Thus, it stands to reason that, in Count Three, Cantona repleads his breach of contract claim as one for unjust enrichment.  Since all parties concur that the Agreement is binding, the Third Cause of Action should be dismissed with respect to Cantona.

        ii.    <u>Olympica Sports Management and Joel Cantona Organisation's Unjust Enrichment Claims Should Be Dismissed Because the Agreement is a Valid Agreement Between the Parties and Therefore Bars Suit on Unjust Enrichment</u>

The Third, Fifth and Sixth Causes of Action also ought to be dismissed with respect to Olympica and Joel Cantona.  Plaintiffs allege that Olympica and Joel Cantona are both third-party beneficiaries to the Agreement.  *See* Compl. ¶¶ 18, 19, 43.  Any recovery owed to them is bound by the contours of the Agreement and their grievances arise out of the same set of facts as their breach of contract cause of action.  Thus, Olympica and Joel Cantona's unjust enrichment claims are barred.  *See RJ Capital*, 2011 WL 3251554, at *12 (dismissing a third-party beneficiary unjust enrichment claim "[b]ecause the unjust enrichment claim against [the

defendants] arises out of a written contract and out of the same facts as the breach of contract claim").[7]  Therefore, Counts 3, 5 and 6 of the Complaint should be dismissed with respect to Olympica and Joel Cantona.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

Dated:    July 10, 2015                                    **DORSEY & WHITNEY LLP**


By   /s William G. Primps
     William G. Primps (WP6626)
     Vikram Kumar (VK1616)
51 West 52nd Street
New York, NY 10019-6119
(212) 415-9200

*Attorneys for Defendant New York Cosmos, LLC*

---

[7] For the reasons outlined in Section II.A.iii. of this memorandum of law, Olympica and Joel Cantona's breach of contract claims ought to fail as well.